MAGGIE M. BUBB, as Administratrix, etc., *Appellee*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

No. 18,050.

SYLLABUS BY THE COURT.

1. "FACTORY ACT"—*Carpenter Shop of Railway Company within its Provisions*. A railway company which maintains a manufacturing establishment is not relieved from compliance with the factory act because the establishment is a mere incident to the company's business as a common carrier, or because the manufactured product is used by the company itself and not sold, or because manufacturing is not within the company's charter powers.

2. —— *Same*. A separate building maintained by a railway company as a carpenter shop, which contains turning lathes, planing machines, boring machines, mitering and mortising machines, circular saws, and other machinery, operated by electricity, wherein lumber is sawed and otherwise converted into proper forms for mold patterns, frames for concrete work, repairs on buildings, and divers other uses, is a manufacturing establishment within the meaning of the factory act.

3. PLEADINGS—*Action under Factory Act—Issue as to Safeguard*. In an action for damages prosecuted under the factory act for failure to provide a safeguard for a circular saw, it is not necessary that the plaintiff advance an issue in the petition respecting the practicability of such a safeguard.

4. NEGLIGENCE—*Safeguarding Machinery — Evidence Sufficient.* The testimony of witnesses describing a circular saw used in a carpenter shop, its accessories, the method of using it, and the danger to be apprehended from it, is sufficient without more to sustain a finding by the jury that it was practicable to safeguard the saw, although several witnesses testified to the contrary.

Appeal from Labette district court. Opinion filed April 12, 1913. Affirmed.

*John Madden,* and *W. W. Brown,* both of Parsons, for the appellant.

*C. E. Pile,* of Parsons, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Oscar M. Bubb was employed by the defendant as a car carpenter. He was killed by a piece of timber projected against him by an unguarded circular saw in the defendant's carpenter shop, where he was working. His widow, as administratrix of his estate, recovered a judgment for damages resulting from his death in an action prosecuted under the factory act. The defendant appeals.

The defendant contends that the deceased was not employed in a manufacturing establishment such as the factory act contemplates. The act contains the following provision:

"Manufacturing establishments, as those words are used in this act, shall mean and include all smelters, oil refineries, cement works, mills of every kind, machine and repair shops, and, in addition to the foregoing, any other kind or character of manufacturing establishment, of any nature or description whatsoever, wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form." (Gen. Stat. 1909, § 4682.)

The defendant is a railway corporation engaged in the transportation of persons and property for hire in

this and in other states.   It maintains at the city of Parsons, where the casualty occurred, roundhouses, machine shops, repair shops, and the carpenter shop in question, for the promotion of its corporate purposes.   The carpenter shop is a separate building and contains turning lathes, planing machines, boring machines, mitering and mortising machines, circular saws, and other machinery, all operated by electricity. In this shop lumber is sawed and otherwise converted into proper forms for mold patterns, frames for concrete work, repairs on buildings, and divers other uses. Under these circumstances the shop is clearly embraced within the statutory definition of a manufacturing establishment.   (*Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657.)

It is urged that a manufacturing establishment is one in which things are made for sale and not for the use of the manufacturer himself.   It has become the custom in many industries to maintain manufacturing departments for the production of articles essential to the conduct of the main business, which may be quite remote from manufacturing.   Thus, growers of fruit in very large quantities frequently manufacture their own packing boxes.   An establishment maintained for this purpose is as much a manufacturing establishment as if it were a distinct and separate enterprise.   The statute concerns itself with labor conditions and not with the destination of products, and whoever sets up an establishment of the character defined by the statute, whether the manufactured article be designed for his own consumption or use or not, must safeguard his workmen in the manner prescribed or suffer the penalty.   For the same reason it is not material whether manufacturing be the principal occupation of the owner or operator of a manufacturing establishment or be merely incidental to some other business. For some purposes the matter might be important.

20—89 KAN.

Thus, if the question were one of taxation the defendant should be classified as a railroad company and not as a manufacturer. But if a company engaged in transportation maintain a manufacturing establishment for the better or more economical conduct of its affairs, it falls within the purview of the factory act the same as if that were its chief business. On the same principle it is of no consequence what the charter powers of a corporation may be if it in fact owns or operates a manufacturing establishment.

The petition did not allege that it was practicable to guard the saw, and it is said that a demurrer to it should have been sustained for that reason. The statute provides as follows:

"In all actions brought under and by virtue of the provisions of this act, it shall be sufficient for the plaintiff to prove in the first instance, in order to establish the liability of the defendant, that the death or injury complained of resulted in consequence of the failure of the person owning or operating the manufacturing establishment where such death or injury occurred to provide said establishment with safeguards as required by this act, or that the failure to provide such safeguard directly contributed to such death or injury." (Gen. Stat. 1909, § 4681.)

Since it is not necessary for a plaintiff to extend his proof in the first instance to the subject of the practicability of safeguards (*Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657), it is not necessary that he advance an issue on the subject in the petition. When it is alleged and proved that the injury complained of resulted wholly or partially from the failure to provide a safeguard required by the statute, the practicability of such safeguard is assumed unless proof to the contrary be produced.

On cross-examination of some of the plaintiff's witnesses, testimony was elicited showing doubt in the minds of those witnesses regarding the practicability of safeguarding the saw. For present purposes it may

be said that there was positive proof that it was not practicable to do so. It is argued that the plaintiff should then have introduced the testimony of witnesses to the contrary. This was not necessary.

The saw was twelve inches in diameter and was fastened to a stationary frame thirty inches in height, covered with a table three feet wide and five feet long, made of two-inch oak timber. The saw protruded through a slot in the table and to a height of four inches above it. The saw was used for ripping lumber, and on one side of it was an adjustable guide for the purpose of regulating the width of pieces to be produced. On the day of the injury three men were working at the saw ripping sixteen-foot boards into strips two inches wide. Bubb would press a board against the saw, which revolved toward him. Another man would hold the board against the guide, and the third man would take the two pieces which came from the saw and walk backwards with them until the board was ripped its entire length. The two-inch piece would then be thrown to one side and the remainder of the board would be passed back for another operation of the same kind. Just as a board left the saw the off-bearer stumbled. The two-inch piece came in contact with the unguarded saw, which seized it and hurled a broken portion of it like a javelin against Bubb's breast.

The foregoing description of the saw and its accessories, of the method of using it, and of the danger to be apprehended from it, given by several witnesses, constituted evidence bearing directly upon the question whether or not a guard could be installed which would protect workmen without substantially impairing the usefulness of the tool. No expert testimony on the subject was required. It takes such slight invention to provide a guard for a saw of this kind and saw shields, guards and screens are now so common that a jury might well regard testimony that they are not

practicable as more derogatory to the witness giving it than to those appliances.

The petition was based upon the factory act alone. No attempt was made to state a cause of action for failure to furnish a safe place to work, or safe appliances with which to work. Therefore the defenses of assumption of risk and contributory negligence on the part of the deceased, which the defendant tried to interpose, were not available, and the constitutionality of the factory act, which the defendant attacked, is no longer an open question in this court. (*Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657.)

The principal questions discussed above were raised in many ways and are argued by the defendant from many points of view, but enough has been said to dispose of them.

The judgment of the district court is affirmed.