No. 18,500.

JOHN H. SLATER, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al. (ALBERT C. BATTELLE, *Appellant*).

### SYLLABUS BY THE COURT.

1. FACTORY ACT—*Partly Penal—Partly Remedial—Statute of Limitations.* The factory act (Laws 1903, ch 356, Gen. Stat. 1909, §§ 4676-4683) is not a purely penal statute; on the contrary it is in part penal and in part remedial. While the public derives a benefit from the enforcement of the law, the immediate purpose of the statute, so far as it allows the injured party to recover, is to accord compensation, and this part of the statute is purely compensatory. Therefore an action in favor of a person injured by a violation of its provisions is not an action for a "penalty or forfeiture," but is an action "for injury to the rights of another not arising on contract," and is controlled by the two-year statute of limitations. (*A. T. & S. F. Rld. Co. v. King*, 31 Kan. 708, 3 Pac. 565.)

2. SAME—*Unguarded Revolving Knives—Negligence—Personal Injuries.* Where the evidence tended to show that the plaintiff's injuries were directly caused by the failure of the de-

Slater v. Railway Co.

fendant to furnish a guard for the revolving knives of a
planer, in compliance with the provisions of section 4 of the
factory act (Gen. Stat. 1909, § 4679), and it was shown that
the machine was designed and intended to be provided with
a device known as a "shavings exhaust," consisting in part
of an iron hood placed directly over the knives, and that
this device was not on the machine when the plaintiff was
injured but was installed shortly afterwards. *Held* that the
purpose for which the device was designed and used was im-
material, since it conclusively appeared that when in place it
served as a guard, and that if it had been in place it would
have covered the knives so that the accident could not have
occurred.

3. SAME—*Practicable to Guard the Knives.* Upon the facts
stated in the opinion, it is held that there was sufficient evi-
dence to show that it was practicable to guard the knives in
the manner suggested in the preceding paragraph as well as
by other methods and appliances.

4. CONTRIBUTORY NEGLIGENCE—*No Defense Under Factory Act.*
Since contributory negligence is not a defense under the
factory act (*Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657), it
is held that the trial court properly refused to submit to the
jury the question whether the plaintiff was negligent.

Appeal from Franklin district court. CHARLES A.
SMART, judge. Opinion filed January 10, 1914. Af-
firmed.

*J. C. Rosenberger, K. C. Reed,* both of Kansas City,
Mo., and *J. W. Deford,* of Ottawa, for the appellant.

*W. J. Costigan,* of Ottawa, and *Guthrie, Gamble &
Street,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this action the servant recovered
judgment for injuries caused by the failure of the
master to comply with the provisions of the factory
act requiring the guarding of dangerous machinery.

The main question raised by the defendant's appeal
is whether the action is barred by the one year's stat-
ute of limitations, which provides that "an action upon

a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation," shall be barred within one year. (Civ. Code, § 17, subdiv. 4.)    The answer depends upon whether the cause of action provided for by the factory act is one for the recovery of a penalty or forfeiture; in other words, whether the act itself is penal.

The defendant calls attention to the case of *Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657, where it was held that neither contributory negligence nor assumed risk are defenses available to the master in an action to recover under the statute.    Our attention is challenged particularly to certain expressions in the opinion in that case where it was said that the act is a "police regulation adopted to reform the inhumanity of factory methods"; that the legislature, instead of attempting to enforce the act by means of a criminal prosecution, saw fit to provide "a civil remedy in damages," and that the statute was adopted "as a means of enforcing a positive duty enjoined by law in the interest of public welfare."    Because of these statements in the opinion, and particularly because we there construed the act so as to permit an employee to recover for injuries sustained by a violation of its provisions, even though he himself was negligent, it is contended that the court has committed itself to the proposition that the act is penal in its nature.    Counsel strenuously insist that the statements referred to were made in the opinion in *Caspar v. Lewin* as grounds for upholding the constitutionality of the act; and it is intimated that, having so ruled in order to save the act from the charge of unconstitutionality, we can not now, "without bending the law to suit the exigencies of each particular case," do otherwise than declare the act to be penal.

In the briefs it is said:

"Counsel for appellee are asking this court to put itself in the abominable position of saying that this

statute is a penalty to save it from unconstitutionality as it did say in *Caspar v. Lewin,* while at the same time saying in the case at bar that it is not a penalty in order to save this case from the bar of the Statute of Limitations."

It may be remarked, in passing, that some of the arguments advanced in this case, like the arguments leveled against the power of the state to enact the factory law at all, would have carried far more persuasive force thirty or forty years ago than in this year of Grace; not because there has been any change in the principles of law which control in the construction of statutes, nor because the police power of the state has been enlarged. The state has always possessed the power to enact such a law. (*Balch v. Glenn,* 85 Kan. 735, 119 Pac. 67.)

The police power inherent in all government was just as broad forty years ago as it is to-day, but laws of this character were absent from the statute books because at that time public sentiment had not crystallized into a demand for their enactment. For instance, it is altogether probable that if congress had attempted forty years ago to enact the stringent provisions of the safety-appliance law requiring interstate railways to equip their trains with safety devices for the protection of the lives and limbs of their employees, the law would have been declared unconstitutional. Yet only the other day the law was again upheld and at the same time construed as intended by congress to permit an employee who was injured by a failure to comply with its provisions the right to recover damages regardless of the ancient doctrine of "assumed risk," and notwithstanding his injuries were occasioned by his "contributory negligence." (*St. Louis & Iron Mountain Ry. v. Taylor,* 210 U. S. 281, 52 L. Ed. 1061; and, see, *Brinkmeier v. Railway Co.,* 81 Kan. 101. 105 Pac. 221.)

Society has made rapid progress in recent years in the development of humanitarian ideas and in a broader realization of the power of the state and the obligations resting upon it to enact laws to prevent the frightful toll of death and disability in hazardous occupations and in the use of dangerous machinery. Legislation has followed with somewhat halting steps, and the courts have quite generally responded to the awakened public conscience, albeit their progress has naturally been slower than that of legislatures.

We find no difficulty in determining that the statute is so far remedial in its character, notwithstanding some of its provisions, that the cause of action is not for the recovery of a penalty or forfeiture. And this we shall undertake to demonstrate, confident that it can be accomplished without embarrassment to the court, and, we trust, without bending the law to suit any supposed exigencies of this or any particular case.

It may be conceded that there is a conflict of authority in the various states as to whether such statutes should be regarded as penal, but it is not believed there is any conflict in the decisions of this court. Actions to recover on statutes which allow double or treble damages, as for cutting or carrying away timber (Gen. Stat. 1909, § 9692), are held to be controlled by the one-year statute. In *Sullivan v. Davis*, 29 Kan. 28, it was said:

"Where more than actual compensation is asked, it is by virtue of some express statute, and the excess is by such statute given in the way of penalty." (p. 34.)

Actions brought under the statutes for failure to comply with a proper demand for the release of mortgages are barred by the one-year limitation, because the plaintiff in such a case is permitted to recover the sum of $100 and attorneys' fees without regard to whether he has been damaged at all. The right to recovery under such statutes has been held penal and not in any sense compensatory. (*Hall v. Hurd*, 40 Kan.

374, 19 Pac. 802; *Joyce v. Means*, 41 Kan. 234, 20 Pac. 853; *Wey v. Schofield*, 53 Kan. 248, 36 Pac. 333); and so the statute providing for amercing a sheriff for failure to execute process (Civ. Code, § 743) has been held penal and not compensatory, for the reason that the delinquent official may be amerced in a sum not exceeding $1000, in addition to being liable for any injuries sustained by the aggrieved person. See, also, *Beadle v. K. C. Ft. S. & M. Rld. Co.*, 48 Kan. 379, 29 Pac. 696, where judgment against the plaintiff on a demurrer to his petition was affirmed on the ground that his action was barred by the one-year statute, the action being to recover a forfeiture of three times the actual damages sustained. It was a penalty allowed against a railroad for charging one person more than it charged others for the same service. In *Milling Co. v. Railway Co.*, 82 Kan. 256, 108 Pac. 137, the one-year statute was applied to an action under the demurrage statute, which provides that a person injured by the failure of a railway company to furnish cars may recover as exemplary damages the sum of $5 per day for each car. The statute was held not merely compensatory but penal.

This court has uniformly refused to enforce wrongful death statutes of other states providing for a fixed recovery or nothing, regardless of actual damages. (*Hamilton v. H. & St. J. Rld. Co.*, [1888], 39 Kan. 56, 18 Pac. 57; *Dale v. Railroad Co.*, [1897], 57 Kan. 601, 47 Pac. 521; *Matheson v. Railroad Co.*, [1900], 61 Kan. 667, 60 Pac. 747; *Rochester v. Express Co.*, [1912], 87 Kan. 164, 123 Pac. 729.)

In *Frame v. Ashley*, 59 Kan. 477, 52 Pac. 474, the three-years statute of limitation was held to apply to an action against a bank officer for receiving deposits in an insolvent bank where the purpose of the action was for recovery of the deposit. The sole question there was whether the action was upon a "liability

created by statute," or "upon a statute for penalty or forfeiture." In the opinion it was said:

"The general rule is that a statutory obligation to pay damages which the common law does not give is 'a liability created by statute,' where the damages awarded are limited to compensation—limited to an amount which merely makes the injured person whole. The general rule also is that a statutory obligation to pay an amount beyond compensation, to submit to more than the simple redress of the wrong done, to pay not merely in respect of the deserts of the injured person but as punishment for the wrong done, is a penalty. Tested by these simple rules the case is easy of solution." (p. 478.)

Referring to the statute giving a mortgagor the right to recover one hundred dollars for failure to release a satisfied mortgage, the opinion said:

"There is no analogy between these statutes and the one under consideration. The latter gives compensation—nothing more, and permits nothing less. The former gives a fixed sum irrespective of the damages actually sustained. Damages from failure to enter satisfaction of a mortgage may be very great. It may be that none whatever occur. Whether great or small, or none at all, the amount recoverable is fixed arbitrarily at one hundred dollars." (p. 480.)

The conclusion reached was that the statute imposed a liability for compensation only, that it was remedial, and therefore not barred by the one-year statute.

The court quite recently had before it the question whether a Colorado statute was penal in the international sense, so that it could not be enforced here. (*Machinery Co. v. Smith,* 87 Kan. 331, 124 Pac. 414.) The statute imposed a liability upon stockholders of a Colorado corporation, and it was sought to maintain an action in the courts of Kansas to recover thereon. Notwithstanding the fact that the Colorado courts had already declared the statute to be penal in the sense that it was barred by a statute of limitations similar to the one involved in this case, we held that the action

might be maintained for the reason that the statute authorized an individual who had sustained a loss by its violation to recover compensation. The opinion was placed squarely upon the well-recognized distinction between a statute entirely penal and one which is in part remedial. In the opinion it was said:

"The statute is beyond doubt penal in a certain sense. And it has often been broadly stated that a penal statute has no extra-territorial force, and will not be executed by the courts of another state or country. A distinction has been made, however, between statutes which are entirely penal, their sole purpose being to punish a violation of the law for the public benefit, and those which are in part compensatory, the violator being required to make good to an individual a possible loss having some connection with his default. It is universally held that statutes of the former character can be executed only by the sovereignty enacting them. But by the weight of later authority, and as we think by the better reason, actions may be maintained anywhere to enforce the liability to an individual, created by statutes of the latter kind. Cases on both sides of the question are collected in 1 Cook on Corporations, 6th ed., § 223, pp. 586-588; and in 3 Clark & Marshall on Private Corporations, § 833." (p. 332.)

The opinion cites, as the leading case on the subject, *Huntington v. Attrill,* 146 U. S. 657, 36 L. Ed. 1123, and quotes from the opinion in that case, where it was said, referring to statutes which are in part compensatory:

" 'As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the state, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it can not be enforced in a foreign state or country.' (p. 676.) " (p. 334.)

In *The State v. Pfefferle*, 33 Kan. 718, 7 Pac. 597, suit was brought under section 4373 of the General Statutes of 1909 to recover a fine and costs taxed as a lien upon real estate where the owner had unlawfully permitted the sale of intoxicating liquors. The trial court held the action barred by the one-year statute. The judgment was reversed, and it was held that the action was upon "a liability created by statute" and not an action for a penalty or forfeiture. Other Kansas cases to the same general effect are: *Durein v. Pontious*, 34 Kan. 353, 8 Pac. 428; *The State v. Snyder*, 34 Kan. 425, 8 Pac. 860; *Snyder v. The State*, 40 Kan. 543, 20 Pac. 122; *The State v. Alexander*, 84 Kan. 393, 114 Pac. 241.

The Durein case was a suit under section 4370 of the General Statutes of 1909 by minor children to recover damages on account of liquor sold to their father. The judgment was reversed upon another point; but in the opinion the court ruled that the action was not one for a forfeiture or penalty, and was therefore not controlled by the one-year statute. Cases from other courts directly in point are: *Coy v. Jones*, 30 Neb. 798, 47 N. W. 208, 10 L. R. A. 658; *State v. A. C. L. R. Co.*, 56 Fla. 617, 47 South. 980; *Woolverton et al. v. Taylor et al.*, 132 Ill. 197, 23 N. E. 1007, 22 Am. St. 521; *Bell v. Farwell*, 176 Ill. 489, 52 N. E. 346, 68 Am. St. 194; *Gardner v. N. Y. & N. E. R. R. Co.*, 17 R. I. 790, 24 Atl. 831; *Hornor v. Henning et al.*, 93 U. S. 228, 23 L. Ed., 879; see, also, Sutherland on Stat. Const., § 208, and cases cited.)

In *Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657, the court was not considering the question of limitations, and there was no intention in any of the language there used to declare that a cause of action under the factory act is for the recovery of a penalty or forfeiture. While the public derives a benefit from the enforcement of the law, the immediate purpose of the statute, so far as it allows the injured party to recover,

is to afford compensation. Under the authority of *A. T.
& S. F. Rld. Co. v. King*, 31 Kan. 708, 3 Pac. 565, the
action is controlled by the third subdivision of section
17 of the code, and must be brought within two years,
being an action "for injury to the rights of another not
arising on contract," and not enumerated in the subse-
quent clauses of the section.

The verdict of the jury was in favor of the defend-
ant railway company, and against the defendant A. C.
Battelle, and he is the only appellant. As against him,
the action was brought within less than two years from
the time it accrued, excluding the periods during which
he was absent from the state.

There remain for consideration some complaints of
error in the admission of evidence and in the instruc-
tions; and the further contention that on the undis-
puted evidence a verdict should have been directed for
the defendant. We deem it unnecessary to enter into a
minute description of the machine at which the plaintiff
was injured. It was a new machine of the latest and
most modern type of construction, and had only been
installed about two weeks. It was known as a "20-12
Boss planer," the figures indicating that it was de-
signed to plane a timber with the maximum thickness
of 20 in. by 12 in. The knives were on "cylinder
heads" located inside the external frame work on the
bed of the machine, and moved at the rate of 3000
revolutions a minute. The timber was fed into the
machine from one end automatically so that a person
was in no danger of coming in contact with the knives
while feeding the machine. Under the cylinder heads
there was a spiral trough into which the shavings were
thrown by the current of air created by the revolving
knives, and the shavings would be discharged at one
side of the machine.

The plaintiff was thirty-seven years of age; had
worked in different shops, and had been working at this
plant about seven months. He was in sole charge of

the machine and of the men who were assisting him. On the day of the accident a pile of shavings on the floor was permitted to grow to such dimensions that the shavings did not escape from the trough and the machine became clogged. The plaintiff took an air hose to which an iron nozzle was attached and which was connected with a compressed air system; and for the purpose of blowing the shavings away from the upper knife head, and without stopping the machine, stood near the machine, and with the nozzle in his left hand directed the air blast against the revolving knives. While doing this the nozzle in some way became entangled in the knives and his left hand was drawn in and cut off at the wrist.

As before stated, the machine had been installed but a short time, and one of the parts known as the "shavings exhaust" had not been placed upon it at the time the plaintiff was injured. It was placed thereon soon after the accident occurred. The testimony shows that this shavings exhaust consisted of a metal pipe or iron boxing running up from above the knife heads to a fan and that the exhaust of air carried the shavings away from the top of the upper knife head. Directly over the knife heads there was an iron flange upon which the hood or boxing of the exhaust was intended to rest. The fan and some portions of the material for the construction of the shavings exhaust were in the shop; other parts were missing, and because another planer had broken down the new machine was started in operation without waiting until the material for the exhaust arrived, and had been operated for two weeks without a shavings exhaust. It was shown by plaintiff's evidence that the hood of the exhaust, if it had been in place, would have set down over the knife heads like a box. "When it is down it completely covers the knives of the upper head." The contention is made that the undisputed evidence shows that it was not practicable to guard the knives against

Slater v. Railway Co.

such an operation as the plaintiff was attempting to perform. We think the undisputed evidence is clearly the other way. Mr. Battelle was a witness and was very fair and frank in his testimony. While he testified that the only reason considered in going to the expense of installing the shavings exhaust system was an economic one for saving the cost of labor in carrying the shavings away, he was asked whether it serves as a guard or acts as a guard over the upper knives. His answer was: "It is a guard, of course, so long as it is down over the head and in its place on the bed; as long as it is not removed it covers the knives so they can not be reached."

He also testified that the usual method of removing shavings that have accumulated on the knives is to use the air blast. Witnesses for the plaintiff testified that the effect of having the shavings exhaust in its place was that it served as a guard, or in other words, while it was in place it would be impossible for an accident such as that by which the plaintiff was injured to occur. In addition, there was testimony of the plaintiff tending to show that it was practicable to guard the machinery by other devices; and all of this was a question for the jury, if there had been no testimony at all upon that subject. (*Bubb, Adm'x, v. Railway Co.*, 89 Kan. 303, 131 Pac. 575.) It is wholly unimportant that the main purpose of the shavings exhaust was to carry away shavings from the knife heads. The evidence conclusively shows that if it had been in place it would have covered the knives so that this accident could not have occurred.

In *Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657, it was expressly ruled that the burden is upon the defendant under the factory act to prove that it was not practicable to guard the machinery. We are not inclined to reconsider that ruling or to restate the principles upon which the decision rests.

But the ingenuity of counsel is not satisfied with the general contention that it was impracticable to guard these knives nor with the claim that the shavings exhaust was not intended as a guard. It appears from the evidence that the hood of the exhaust is designed to be raised and lowered as occasion may require, by means of a rope and pulley; and evidence was offered tending to show that, even with the exhaust system in operation, the knives sometimes became clogged with shavings, especially when wet or very heavy lumber is being planed, and that when this occurs it is customary to raise the hood, stop the machine and use the air blast to blow the shavings away. It is urged that by neglecting to keep the pile of shavings away from the trough the plaintiff had created a situation in which it would have been necessary for him to raise the hood in order to dislodge the shavings; and that if in such a situation he had attempted this without first stopping the machine the injury would have occurred in the same way. In support of this contention, the recent case of *Weeks v. Packing Co.*, 90 Kan. 365, 133 Pac. 713, is cited. There the action was under the factory act for failure to guard an elevator. It was necessary for the plaintiff to gain access to a fuse box in the elevator shaft. The shaft was protected by a movable horizontal bar. He testified that the bar was down at the time of the accident; that he put it down himself; that it was about three feet from the floor, and that while he was leaning over the bar and examining the fuse box, the elevator was lowered from the floor above and injured him. It was held that under the facts of that case there was no evidence that the failure to enclose the elevator contributed to his injury. It was suggested in the opinion that had the elevator been enclosed with a door he would have been compelled to open it in order to reach the fuse box and to have stood partially at least over the shaft.

A rehearing has been granted in that case and therefore the defendant can not rely upon it as authoritative. However, the principles upon which it was decided can have no application to the facts in this case. The defendant's contention rests merely upon a theory as to what might possibly have occurred if the knives had in fact been guarded by the presence of the hood, and plaintiff had removed the protection. The application of the factory act must be determined upon the undisputed facts as they exist, instead of upon pure speculation of what might have happened upon a wholly different state of facts.

It does not appear that the plaintiff was allowed to state his conclusions respecting either the practicability of guarding the machine or that the hood was installed or intended as a guard. He, as well as the defendant and other witnesses, testified that it served the purposes of a guard when in place. It was not contended at the trial that the sole purpose of its installation was to provide a guard; nor indeed was it necessary to show that such was its purpose. As we have seen, the intention with which it was installed was not controlling, since it conclusively appears that the machine was designed to have such a device and that when installed it served the purpose of a guard. Moreover there was evidence from which the jury could have found that it was practicable to guard the knives by other methods and appliances.

The court properly instructed that the plaintiff could not recover if the jury found from the evidence that it was impracticable to guard the knives so as to prevent the occurrence of the accident. Contributory negligence is not a defense under the factory act (*Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657) ; and it was not error to refuse to submit to the jury the question of whether the plaintiff was negligent. If the direct cause of the injury was the failure to provide a guard, his negligence could not have been more than a

contributing cause. What has been said respecting the
various contentions of the defendant makes it unneces-
sary to consider in detail the objections urged against
other instructions. It is sufficient to say that the in-
structions fairly defined the issues.

We discover no error in the record and the judg-
ment will be affirmed.