No. 20,377.

CHARLES L. TRUMAN, *Appellee,* v. THE KANSAS CITY, MEXICO & ORIENT RAILROAD COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. FACTORY ACT—*Two Acts of Negligence Alleged—Only One Proven— No Material Variance—No Prejudicial Error.* Where a cause of action sufficiently pleads and the evidence sufficiently proves such negligence as will render a defendant liable thereon it is not a material variance that the same cause of action also alleged other acts of negligence which were not established by the proof, when the superfluous allegations not proved could not have misled the defendant to his prejudice. (Civ. Code, § 134.)

2. SAME—*Railroad Repair Shop—When Governed by Factory Act.* In the conduct of its car-repair shop, a railroad company which has elected not to come under the provisions of the workmen's compensation act (Laws 1911, ch. 218; Laws 1913, ch. 216), is governed by the factory act (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683), and its liability for injuries sustained by its workmen in such car-repair shop is controlled by the latter act, and not by the common carriers' liability act (Laws 1911, ch. 239), following *Bubb, Adm'x, v. Railway Co.,* 89 Kan. 303, 131 Pac. 575.

3. FACTORY ACT — *Unguarded Circular Saw — Injuries to Workman — Certain Evidence Properly Rejected.* Where a workman in a car-repair shop sustained injuries to his hand which came in contact with an unguarded circular saw it was not error to exclude evidence that the sawing machine had been examined and found without fault by the state factory inspector; nor was it material error to exclude testimony that other saws were similarly operated in the community without safeguards.

4. SAME — *Finding of Jury — Conclusive.* Ordinarily a jury's finding that it is practical to attach a safeguard to a piece of dangerous machinery, when such finding is approved by the trial court, is conclusive.

5. SAME—*Unguarded Machinery—Burden of Proof—Proper Instruction.* The court's instructions to the jury that the plaintiff was not required to prove that it was practical to attach a safeguard to the machinery which injured him and that the burden to prove its impracticability rested on the owner of the machine were proper and in conformity to the provisions of the factory act and the doctrine announced in *Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657.

6. SAME—*Excessive Verdict.* A judgment for $8000 as damages to plaintiff's hand discussed and held to be excessive. Plaintiff given option of a judgment for $5000 or a new trial.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed October 7, 1916. Modified and conditionally affirmed.

*R. L. Holmes, C. G. Yankey, W. E. Holmes,* all of Wichita, *John A. Eaton, Dudley W. Eaton,* and *H. J. Eaton,* all of Kansas City, Mo., for the appellant.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff obtained a judgment for $8000 as damages for injuries to his right hand while operating a circular saw in the car-repair shop of the defendant at Wichita. The saw, which was thirty inches in diameter, revolved upon an adjustable steel table, projecting a few inches above the table-top, and a considerably larger part of the saw, some twenty-two inches of it, revolved beneath the table. The machine had a device for feeding boards and timbers into the saw, and the speed of this feeding device was regulated by a system of cone pulleys, one-half of which were attached to the machine below the table-top and about ten inches distant from the saw. To change the speed of the feeding device it was necessary to reach under the table and shift a belt from one cone pulley to another by hand. There was no mechanical belt shifter or other contrivance for shifting the pulley belt, and the space

under the table between the cone pulleys and the saw was open and unguarded. It was also in evidence, and in conformity to an elementary principle of mechanics, that it is inconvenient and difficult to shift the belt of a system of cone pulleys except when the machine is running.

As to the manner and extent of his injuries, the plaintiff testified:

"One of the boys brought in a board and wanted it ripped; and I started the saw and after I got it started the belt underneath the machine wouldn't pull the feed to feed it and it was dangerous to feed it without the feed running. We used to put on rosin on the belts to make it pull the feed and the master mechanic cut us out on the rosin, then we put on what was called belt dressing. It is in sticks about nine inches long and about one and a half through. You take that in your hand and hold it on the belt which is underneath the saw and runs from the main shaft where the saw was applied down to another shaft below that. It has three different feeds on it and on these feeds there is a high speed, middle speed and low speed. You have to put this belt on there by your hands; there is no belt shifter fixed to shift that. You have got to shift it when it is in operation with your hands. . . . The only way you have, you have got to go around and get behind the machine and get down in there to shift this belt. So I applied this dressing to it. In applying the dressing it jumped from this one, the middle one, down to the low speed again, and throwed my hand over like that and cut these two fingers off and injured this one until it isn't any good. At times I can't use it. In my trade I can't use a hammer or a saw, and the fleshy part of my hand hurts and it swells up here on the knuckle of the other one; my finger is helpless, so all I have is one finger and the thumb. There is a continual hurt all the time, even at nights. It is my right hand. . . . Up to the time of my injury I was able to use tools. I was drawing wages of $2.24 a day. I have never done any house work to amount to anything. My occupation is car man, car carpenter. I had steady employment with the Orient at that time. My health is good. My nervous system was in good condition. I was stout physically and had no physical infirmities and was able to put in a full day's work and earn a steady salary. These two fingers are off right at the fingers on my hand; they are the two small fingers on the right hand. The other finger is affected; that is, you see it is impossible to straighten it any more than just like that; and if I just bump it or shake it a little it is helpless. I can straighten it out like that. It is affected right in the joint. It was cut where the scar is—cut clear to the bone. It was stiff for about two months and a half. I am able to just ordinarily use it. I can close it about half. I can't catch around anything with it. There is no strength in the second finger; it is weak, helpless. I have practically only one finger on that hand. I haven't got the strength in the arm that I had before.

"I have worked part of the time since the accident. I am now working for the Missouri Pacific, drawing $1.60 a day, trucking freight. If I go to lift anything I just get my arm under it because I can't lift anything with this because I ain't got strength enough. I made an effort to see if I could get better wages, but I could n't."

Certain special questions were answered by the jury:

"3. State what was the direct and proximate cause of plaintiff's injuries. Ans. By his hand coming in contact with an unguarded saw.

"6. Was it practicable to safeguard said saw in question at the point where plaintiff was injured? Ans. Yes.

"8. Could plaintiff have shifted the belt running on the two cone pulleys underneath the table while the machine was stopped? Ans. No."

Defendant's chief grounds of appeal and errors assigned will be noted in order. It was not error to overrule defendant's demurrer to the evidence, nor was there any material variance between the pleading and the proof. (Civ. Code, § 134.) It is true that one of the grounds of plaintiff's first cause of action was the defendant's failure to furnish some suitable device for shifting the belt, and this allegation was not sustained by the evidence and was resolved for defendant by the jury's special findings. But the first cause of action also alleged:

"That defendant was negligent in failing to have said circular saw and each and every part thereof properly and safely guarded so that the said plaintiff in working in and about the same and operating said saw could not come in contact with said saw and be injured thereby."

The evidence was sufficient to support that allegation and the jury so found. The other alleged negligence may be treated as superfluous and immaterial. It did not prejudice the defendant.

No purpose would be served by reviewing again the question whether a railroad company which employs many workmen in its car shops is amenable to the factory act of 1903. (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683.) That has already been fully determined. (*Bubb, Adm'x., v. Railway Co.*, 89 Kan. 303, 131 Pac. 575; *Slater v. Railway Co.*, 91 Kan. 226, 137 Pac. 943.) Of course, a railroad company, in its transportation business, is likewise governed by the common carriers' liability act of 1911 (Laws 1911, ch. 239) and by a good many other acts as well. But the car-repair shop of a railroad is a factory, and in the operation of it the railroad

company is as much bound by the factory act (§ 7) as it would be if that were its only corporate business and it were not engaged in the transportation business at all. Many modern railroads maintain hotels for the convenience of their patrons, but it would hardly be contended that in the conduct of their hotels they are not amenable to the laws pertaining to hotels and innkeepers for the safety of guests. The evidence and jury's finding dispose of the contention that no violation of the factory act was proven.

"All . . . saws . . . used in a manufacturing establishment shall, where practicable, be properly and safely guarded, for the purpose of preventing or avoiding the death of or injury to the persons employed or laboring in any such establishment." (Factory Act, Laws 1903, ch. 356, § 4, Gen. Stat. 1909, § 4679.)

Complaint is made that the trial court shut out evidence proffered by defendant that the state factory inspector had visited the defendant's shops shortly before plaintiff's accident and that he had inspected the machine and made no objection to it; and that the other planing mills and saw mills using circular saws in Wichita did not guard the saw blades beneath the tables on which they were operated. The plaintiff's right to recover in no way depended upon what the factory inspector's opinion was touching the defendant's compliance with its duty to guard or screen all dangerous machinery, where practicable, for the safety of its workmen. We hardly think it important as affecting this lawsuit that other circular saws in other Wichita factories were unscreened and unguarded, although it is to be hoped that plaintiff's accident— not to mention the damages assessed against this defendant— has prompted a reformation in that respect.

Certain instructions of the trial court are criticized. The court told the jury, in substance, that the factory act had changed the old rules of evidence as to the burden of proof, and that it was unnecessary for plaintiff to prove in the first instance that it was practical to place a safeguard about the saw, and that it was for the defendant to prove that such safeguard was impractical. These instructions are in harmony with what this court said in *Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657:

"Under the statute the plaintiff was not required to go further and offer proof in the first instance that it was practicable to guard the

shafting. The legislature was evidently moved by the fact that very often an injured employee is not competent to demonstrate the practicability of providing safeguards, and may not be able to command the expert evidence necessary to do so. The accident may have wrecked the machine, or the factory owner may remove it or deny him access to it. When the employee is killed, or witnesses are killed, the way to recover is still further embarrassed. On the other hand, the factory owner always possesses the ability to show that additions in the direction of safety would destroy the efficiency of the appliance causing the injury, or would otherwise be impracticable." (p. 635.)

Counsel for defendant urge us to qualify the doctrine thus quoted. This we can not do. Moreover, in this case, elaborate photographs of the machine which injured the plaintiff have been submitted to us, and from an inspection of them we could hardly have more hesitancy than did the jury in finding that it was altogether practicable to place a screen or other safeguard between the cone pulleys and the saw which injured the plaintiff.

Other errors assigned have been considered but none of them is of sufficient consequence for any comment nor to affect the result of this review.

We come now to the only question which presents any difficulty in this case. It is urged that the verdict and judgment for $8000 for the injuries to plaintiff's hand are excessive. We are constrained to hold that this contention is meritorious. While it is true that no amount of monetary award will adequately compensate a person for a permanent physical injury to his body or any of its members, yet in this work-a-day world where such accidents do happen, it is the only reparation possible; and the law, the courts, and the public have striven to find a fair and approximate monetary measure for human injuries, basing their estimates partly upon many prior similar awards, partly and perhaps unjustly upon the financial ability of the party against whom the award is assessed, partly upon the loss of time and earning power occasioned to the injured party. It would be impossible to recount all the factors which enter into the common and general notions of what is fair and just as a basis to measure the damages for personal injuries. There can be no absolute standard to measure such damages, and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award. The most

courageous and practical attempts to measure damages for personal injuries are the workmen's compensation acts. These acts originated in Germany and Great Britain, and in. modified adaptations to local conditions have been enacted in this country and in many of the states. Our own act (Laws 1911, ch. 218; Laws 1913, ch. 216), which provides a system and measure of monetary awards to be paid by employers for injuries sustained by their workmen, is based chiefly upon the theory that these sums will be paid without cavil, lawsuit or other expense to the injured workmen. Naturally the awards should be higher where their payment is uncertain, or where contested or delayed. If the plaintiff and his employer, the defendant railroad company, had elected to come under the Kansas workmen's compensation act the award could not have been in excess of fifty per cent of his preceding average weekly wages for eight years. This would not amount to more than $2802.24. Of course, the compensation act is in no way controlling in this case, but the illustration drawn from its provisions gives some light on defendant's grievance. Counsel for plaintiff would justify the amount of the judgment by computing the life expectancy of the plaintiff, a healthy man, aged thirty-seven years when he was injured, at thirty years, which would be 9390 working days, at sixty-four cents per day, which is the difference between his present daily earnings and those before his injuries. This would amount to $6009.60. The same computation, taking a twenty-five years' expectancy, would produce $5009.60. One difficulty with such bases, however, is the questionable assumption that plaintiff's earning capacity would continue throughout his entire life expectancy the same as in the health and vigor of his prime. That could not be. Space and time will not permit us to extend this discussion. It is with much reluctance that we disturb the amount of the judgment, but after making every fair allowance for difference of opinion we are impelled to hold that the award is at least $3000 too much; and the case will be remanded to the district court with instructions to give the plaintiff the option of a modified judgment fixing his damages at $5000, with the alternative that a new trial be granted.