**Gaylord M. HUGGINS, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 16277–3.**

United States District Court
W. D. Missouri, W. D.
June 11, 1969.

## MEMORANDUM FINDINGS OF FACT, CONCLUSIONS OF LAW, JUDGMENT

BECKER, Chief Judge.

This is an action for damages under the Federal Tort Claims Act in which plaintiff alleged that as a result of defendant's negligence in not providing him with a reasonably safe place to work when he was an inmate of the United States Penitentiary at Leavenworth, Kansas, he lost portions of 3 fingers of his left hand in operating an unguarded planer.

After the completion of full discovery, a plenary evidentiary hearing on the joined issues was held on February 11, 1969, in which both parties adduced evidence and the Court made findings of fact as follows:

The plaintiff at the time of trial was employed at Morgan Foundry, West 40th and Freemont, in Kansas City, Missouri which is a division of Clay & Bell Manufacturing Company, as a "foreman of soil pipe" in the cast iron department. In that position, he earns a monthly wage of $525.[1] Before his injury, plaintiff was an automobile mechanic, who earned approximately $3.00 per hour.[2] His experience as an automobile mechanic, according to his own uncontroverted testimony, dated from his grade school days when his father owned a gas station and plaintiff did such work as tune-ups and grease jobs. Later, as a member of the Army, plaintiff attended three different military mechanic schools and was promoted to the rank of sergeant (E–5),[3] at which rank he performed the functions of a general mechanic.

On October 1, 1965, plaintiff began service of a term of 3 years' imprison-

Allan R. Browne, Ennis, Browne & Martin, Kansas City, Mo., for plaintiff.

John L. Kapnistos, Asst. U. S. Atty., Kansas City, Mo., for defendant.

1. The monthly wage of $525, on the basis that plaintiff works 9 hours a day, 5 days a week, and 5 hours on Saturday, indicates a 200-hour month and an hourly wage of $2.62. The yearly wage would be $6,300. Plaintiff testified that, as an automobile mechanic, he would earn at least $3.00 per hour. The annual wage in that case would be $7,200, a difference of $900 yearly.

2. This is regarded as having been established as fact by virtue of the uncontroverted testimony of the plaintiff.

3. This represents a point in enlisted military ranks between the lowest, E–1, and the highest, E–8.

ment at Leavenworth Penitentiary as a result of a conviction by court-martial on a charge of child molestation. Plaintiff declined parole consideration, though he accepted credit for the statutory good time he earned.

While a prisoner at Leavenworth, petioner worked in a prison industry serving as "tool room man", for which he received no money or other credit.

The planer upon which plaintiff sustained injury consists of a long table with knives attached to a rotating cylinder in it. The knives are rotated slightly above the surface in an opening in the table of the planer, thus permitting them to plane the surface of a board which is placed on the table, pressed down, and moved along the surface of the table.

On the date of the injury in question, another prisoner informed plaintiff that the blades of the planer were dull and chipped, whereupon plaintiff, acting as authorized in his capacity as "tool room man", took out the bolts which held the blades in place, removed the old blades, replaced them with new blades, and tightened the bolts back up. In order to try out the new blades plaintiff then put a short piece of birch or walnut board with a knot in it in the pusher block, which had no handle on the front end. The walnut or birch board to be planed protruded only slightly from the pusher block because it was nearly the same length as the pusher block. Plaintiff then started the board through the planer, which was unguarded. Plaintiff pushed the board forward with his right hand and put weight downward on the

forward end of the pusher block with his left hand. When the board came onto the blades, it flew up and plaintiff's left hand went forward into the blades, severing his little finger at the first joint, the ring finger at the first joint, and the middle finger halfway to the first joint. As a result, plaintiff has no grip in his small and ring fingers, and has scars which are sensitive to cold and pressure.

■ Plaintiff had never changed the blades of this planer before the accident. He testified that he did not know the machinery was unsafe.[4]

Plaintiff's injuries were solely to his left hand. He is, principally, right-handed, although he testified to some ambidexterity. He is able to perform the tasks required by his present job with facility[5] and is able to perform most other usual tasks and functions of life such as driving his car. The lack of grip and sensitivity in the fingers of his left hand, however, prevent him from following the vocation in which he was trained and experienced before his imprisonment, that of automobile mechanic.

Defendant adduced testimony by various employees of the penitentiary that safety instructions were given plaintiff during his term of imprisonment; that plaintiff was an "outstanding" worker in the prison shop, who at one time himself delivered a safety talk to the other men;[6] that there were signs around the machines in the shop which urged safety;[7] that, after the accident in which plaintiff sustained injury, the shop foreman checked the new blades

4. As will be seen below, defendant has offered considerable evidence to controvert this testimony, but it is unavailing where plaintiff's obligation as a prisoner was to accomplish his assigned tasks even in disregard of unsafe machinery.

5. By his own testimony, plaintiff can perform every task required of any employee in the "spinner" department of the foundry in which he is employed, including the manipulation of a large ladle, which is the reason for his being foreman of this department.

6. Of this safety talk, plaintiff testified that it was forced upon him without notice or preparation and as a result was much briefer than scheduled, amounting chiefly to generalities about "being careful".

7. The evidence is uncertain regarding precisely which warning signs were adjacent to the planer at the time of the accident. A sign which warned operators to "watch hands" and not to insert boards of less than 12 inches in length was not put up until after the accident.

which plaintiff had bolted in (and by which portions of his fingers had been severed) and found one blade protruding outwards $\frac{1}{8}''$ more than the others;[8] that push blocks without forward knobs were always available and authorized for use on the planer; that some push blocks with forward knobs have been made available since the accident; that plaintiff was "tool room man" and hence authorized to change the blades; and that plaintiff, after the accident, admitted to a supervisor[9] that he had "used too short a block of wood."

The Kansas Factory Act, Sections 44–104 to 44–107, K.S.A., applies to this case. Under Section 44–107 of the Kansas Statutes Annotated, a "manufacturing establishment," besides certain named establishments, is one "wherein any natural products or other articles or material of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form." See Caspar v. Lewin, 82 Kan. 604, 109 P. 657, 49 L.R.A.,N.S., 526. Cf. Anderson v. Cooper, 192 Kan. 723, 361 P.2d 86. With specific applicability to planers, the former section reads as follows:

"*Belt shafters; pulleys; guards for machinery.* Every person owning or operating any manufacturing establishment in which machinery is used shall furnish and supply for use therein belt shafters, or other safe mechanical contrivance, for the purpose of throwing on or off belts or pulleys; and wherever it is practicable, machinery shall be operated with loose pulleys. All vats, pans, saws, planers, cog gearing, belting, shafting, setscrews and machinery of every description shall, where practicable, be properly and safely guarded, for the purpose of preventing or avoiding the death of or injury to the persons employed or laboring in any such establishment; and it is hereby made the duty of all persons owning or operating manufacturing establishments to provide and keep the same furnished with safeguards as herein specified."

Defendant questions the applicability of the statute to the case at bar, contending that (1) guards would be ineffective to prevent accidents of this kind on this particular planer because any guard would necessarily have to be shoved back to expose the blades while they were cutting, and (2) because any pusher block would be an inadequate safeguard against injury, when a short piece of wood is being planed.

The leading decision construing this act, however, holds that it imposes more than the mere requirement "that employees be protected from machinery." P. Caspar v. Lewin, *supra.* From the facts found in this case, it is obvious that adequate safeguards from this type of accident could have been implemented by the required use of a longer pusher block or a pusher block with a knob on the front end, or a block possessed of both special attributes. When the safety measure is obviously to be instituted as a prerequisite to protecting workers from the machinery, or as a device which would effectively serve as a guard where one is required by law, the factory act requires it. See Slater v. A.T. & S.F. Railway Company, 91 Kan. 226, 137 P. 943, L.R.A. 1916F, 949. The long block or the forward pusher may properly be considered in this context as the equivalent of an "effective guard" on the planer. Caspar v. Lewin, *supra;* Slater v. A.T. & S.F. Railway Company, *supra.* In the latter case, it was held that a "shavings exhaust" should be deemed to be an effective guard for the revolving knives of a planer within the terms of the Kansas Factory Act. It was further held, as a general rule, that (for this safety measure to be required by the Act) it could be sufficient to show that

8. The evidence showed that, although the unevenness of the blades could be pretested without trying them out, it would require an expert to do so.

9. The witness Pfrimmer, whose testimony is noted hereinafter.

it was practicable to guard the knives in this manner, "as well as by other methods and appliances." Statutes requiring employers to cover or guard dangerous machinery should not receive a narrow construction, but rather should be liberally construed to carry into effect their legislative intent. 56 C.J.S. Master and Servant § 232; Humble Oil & Refining Co. v. Hendrix (C.A.10) 2 F.2d 33. The Kansas Supreme Court has held, in Caspar v. Lewin, *supra*, that the "sole purpose" of the Kansas Factory Act was to "wipe out" such "narrow and conditional liability" as had been imposed by the common-law with its requirement of reasonably safe place to work being subject to the defenses of assumption of the risk and contributory negligence "and to substitute another." 109 P. 657, l. c. 666.

■ Defendant also pleads assumption of risk in that plaintiff, (1) with full knowledge of the risk involved by virtue of his shop acumen, the signs around the planer, and frequent safety lectures (2) voluntarily undertook the task which led to his injury. Assumption of risk, however, is no defense under the Kansas Factory Act, nor is the allegation that plaintiff was not in the performance of his ordinary duties. Caspar v. Lewin, *supra*. It is manifestly evident, even without this precedent, that the prisoner-plaintiff did not voluntarily enter onto the task which resulted in his injury. As a prisoner, he had no power to refuse to do what he was told to do. As "tool room man", it was within the scope of his duty to replace the blades of the planer. Instructions or warnings of inherent danger are likewise irrelevant and inadequate where a prisoner or other employee must be accorded a "reasonably safe place to work." Employee activity within the scope of duty cannot effectively be restricted by warnings and instructions.

Similarly, a defendant's contention of contributory negligence does not consti-

tute a defense under the factory act. Caspar v. Lewin, *supra*.

■ The facts proved by the evidence herein, therefore, clearly establish the liability of defendant to plaintiff under the Kansas Factory Act. The penitentiary is a "manufacturing establishment" within the definition of the Act; the plaintiff was a person "employed or laboring in * * * such establishment"; the machinery therein upon which plaintiff was injured could practicably be properly and safely guarded, but was not; and as a result of the breach of duty to furnish the machinery with safeguards, plaintiff was injured.

■ The evidence further shows that the difference between what plaintiff could have earned as an automobile mechanic, which vocation he was prevented from further pursuing by reason of the injury sustained to his left hand, and that which he earns in his present vocation is $900 per year; and that, at the time of the accident, plaintiff's age was 35 and his life expectancy at time of trial was 33.58 years.[10] A proper measure of damages for loss of earning capacity is the income which might have been earned by plaintiff except for the injury minus present earnings which may be expected to continue in the future and minus income tax which would have been paid. McWeeney v. N.Y., N.H. & H.R. Co. (C.A.2) 282 F.2d 34, cert. den. 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93. Further, in consideration of plaintiff's employability in the light of his past record, the level of his disability, his ability before and after the injury, his age, physical condition, and life expectancy, it is determined that plaintiff has been damaged in the sum of $10,000 and that he should therefore recover that sum from the defendant. Such an award is neither inadequate nor excessive. See Anno. 11 A.L.R.3d 9, 142–147. It is therefore

Ordered and adjudged that plaintiff have and recover the sum of $10,000 from the defendant herein.

10.  See 42 V.A.M.S., p. 801.