No. 21,928.

J. E. MATHEWS, *Appellant,* v. THE UNION CENTRAL LIFE
INSURANCE COMPANY, *Appellee.*

OPINION DENYING A REHEARING.

Appeal from Jackson district court; FRED T. WOODBURN,
judge. Opinion denying a rehearing filed April 12, 1919.
(For original opinion of reversal see ante, p. 254.)

*Eugene S. Quinton,* of Topeka, *Guy L. Hursh,* and *E. R.
Sloan,* both of Holton, for the appellant.

*T. F. Garver,* of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: In a petition for a rehearing, the following
queries are propounded:

"Has the doctrine of *stare decisis* become obsolete?

"Are courts and lawyers no longer justified in relying upon and fol-
lowing precedents established by this court?

"Are decisions of this court to be regarded as overruled by implica-
tion?

"Is there no longer any distinction between payment, and mere tender
of payment, of a debt?"

The decisions alluded to as forming precedents calling for
application of the doctrine of *stare decisis* are the following:
*Perkins v. Matteson,* 40 Kan. 165, 19 Pac. 633; *Joyce v. Means,*
41 Kan. 234, 20 Pac. 853; *Fuller v. Wells,* 42 Kan. 551, 558, 22
Pac. 561; *Coffman v. Hillard,* 44 Kan. 538, 24 Pac. 1098; *Wey
v. Schofield,* 53 Kan. 248, 36 Pac. 333; *Slater v. Railway Co.,* 91
Kan. 226, 230, 137 Pac. 943.

The first four decisions referred to the statute of 1868,
which remained in force until March 6, 1889, when it was sup-
planted by the act, two sections of which, as improved by an
amendment made in 1915, were quoted in the original opinion.

The Wey case involved mortgages which were satisfied in
1886 and 1888. The action was brought in March, 1890. More
than a year had elapsed between satisfaction of the mortgages
and demand for releases, and it was held the action was barred
by the one-year statute of limitations contained in the civil
code. Neither the old nor the new statute was cited, and it is

quite apparent the decision was rendered without noting the change in the law, for section two of the act of 1889, expressly designed to give a right of action in just such cases as the one the court had before it, was not referred to. That section was not quoted in the original opinion. It reads as follows:

"That section one of this act shall be construed so as to apply to mortgages heretofore paid, but not discharged of record: *Provided,* That if the residence of the holder of such mortgage can be ascertained, no action shall be brought until demand is made in accordance with said section; but such demand need not be in writing, and will be excused if the residence of the holder if such mortgage cannot, with due diligence, be ascertained." (Gen. Stat. 1915, § 6472.)

The Slater case, which involved the factory act, and had nothing to do with failure to satisfy discharged real-estate mortgages, merely referred, by way of argument and illustration, to the cases interpreting the statute of 1868, and some others.

The statute of 1868 reads as follows:

"When any mortgage of real property shall have been satisfied, it shall be the duty of the mortgagee or his assignee, immediately, on demand of the mortgagor, to enter satisfaction, or cause satisfaction of such mortgage to be entered, of record; and any mortgagee, or assignee of such mortgagee, who shall neglect or refuse to enter satisfaction of such mortgage, as is provided by this act, shall be liable in damages to such mortgagor or his grantee or heirs, in the sum of one hundred dollars, to be recovered in a civil action before any court of competent jurisdiction." (Gen. Stat. 1868, ch. 68, § 8.)

In the decisions to which the petition for a rehearing refers, this statute was regarded as penal in its nature, and an action based on the statute was regarded as one to recover a penalty. The soundness of these decisions is not now a matter of consequence. The court has no disposition to overrule them by implication, or otherwise to disturb them as precedents, because the legislation with which they dealt has been superseded.

By the year 1889 the real-estate mortgage business in Kansas had assumed enormous proportions. The act of 1868, which merely acted on the person of the mortgagee, giving him a gentle tap on the wrist when jurisdiction could be acquired, was no longer adequate to relieve the embarrassment of the state's landowners, resulting from the indifference and perverseness of mortgage holders, nonresident mortgage holders

in particular, with respect to clearing the public records of defunct instruments. The comprehensive act of 1889 was framed to cure the mischief. The court is not inclined to debate much further than it has done, the character of that act. It is remedial. It deals, not merely with offenders whom it penalizes, but with the offenses they commit, a distinction which, ever since Blackstone lectured, has been recognized as determining the method of interpreting statutes, whether strictly, or liberally and beneficially. (1 Blackstone's Commentaries, p. 88.)

In the petition for a rehearing the difference between compensation and penalty, stated in *Sullivan v. Davis*, 29 Kan. 28, is quoted. The action was one for treble damages, and the court said:

"The general rule in respect to all torts is that compensation, and compensation alone, is recoverable. Where more than actual compensation is asked, it is by virtue of some express statute, and the excess is by such statute given in the way of penalty." (p. 34.)

In the case of *Frame v. Ashley*, 59 Kan. 477, 53 Pac. 474, the writer of the opinion applied this rule in distinguishing the statute then before the court, giving a depositor in an insolvent bank the right to recover from officers of the bank, from the mortgage statute. Apparently the only previous decision relating to the latter statute which was cited or considered was the Wey case. It is perfectly clear that the statute of 1889, as a whole, was not considered at all, and the petition for a rehearing cites no decision of this court in which that statute has been heretofore considered and interpreted as a whole. That statute is no longer the brief and simple affair it was in 1868, and its true meaning and purpose must be determined from the blended effect of all its provisions.

As suggested in the former opinion, the provision authorizing recovery of the stated sum of one hundred dollars, when considered alone, may well be regarded as compensatory. Neglect or refusal to release a satisfied mortgage, after due demand, constitutes a real injury, for which substantial reparation ought to be made. Instead of leaving it to a jury to use their judgment as to the proper amount, the legislature used its own judgment, and assessed a designated sum as general damages, not by way of fine or punishment of the mortgagee, but by way of reasonable redress to the mortgagor or landowner. The provision cannot, however, be considered alone.

The old law, the evils which necessitated further legislative action, and not simply a fraction of the remedy, but the entire schedule of relief, legal and equitable, must be taken into account, before the act can be properly classified. When this is done, the particular provision takes the cast and color of the scheme of the act, which is clearly remedial, and as such must be liberally interpreted to suppress the mischief and advance the remedy. (1 Blackstone's Commentaries, p. 87.)

The petition for rehearing cites cases decided under the statute relating to release of satisfied chattel mortgages. That statute is the statute of 1868, which merely referred to the real-estate mortgage statute of 1868 for remedy.

What has been said disposes of the fourth query, relating to the distinction between tender and payment. Tender is what it always was, and payment is payment. The consequences of tender are likewise what they always have been. One of the consequences of tender by a mortgagor is that it entitles him to a release of his mortgage. When entitled to a release, he may demand it. If the demand be not complied with, he may resort to the statute.

The petition for a rehearing is denied.