No. 24,743.

F. M. CUTLER and OLIVA I. CUTLER, *Appellants,* v. THE FIRST NATIONAL BANK OF SCOTT CITY et al., *Appellees.*

### SYLLABUS BY THE COURT.

REDEMPTION OF LAND SOLD AT MORTGAGE SALE—*Tender of Amount of Indebtedness—Acceptance of Tender—Final Judgment—No Accounting—Estoppel.* The proceedings in an action by a mortgagor to redeem, considered, and *held,* plaintiffs were not entitled to an accounting to determine the exact amount of their indebtedness, because of a tender by plaintiffs kept good by the petition, acceptance of the tender and confession of judgment by defendants, and subsequent conduct of the parties.

Appeal from Scott district court; ROSCOE H. WILSON, judge. Opinion filed November 10, 1923. Affirmed.

*William H. Thompson,* and *W. F. Thompson,* both of Kansas City, for the appellants.

*Albert S. Foulks,* of Ness City, *W. H. Russell,* of La Crosse, and *H. A. Russell,* of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken from an order refusing an accounting to a mortgagor, whose tender of redemption money to the mortgagee in possession was accepted.

The bank claimed ownership and possession of a tract of land, title to which had been acquired through foreclosure proceedings

against plaintiffs, and plaintiffs commenced an action to redeem. The petition stated that on September 3, 1920, plaintiffs offered to redeem by paying all their indebtedness to the bank, and taxes on the land paid by the bank, and that, pursuant to the offer, they tendered to the bank $36,000. The petition offered to pay into court the money tendered to the bank, to pay subsequent taxes paid by the bank, and to pay whatever sum might be found due to the bank, whenever directed to do so. The petition further stated plaintiffs did not know the exact amount of their indebtedness and the amount of taxes paid by the bank, but alleged the total sum was $35,509.

On May 15, 1922, the bank accepted the tender, confessed judgment in the action, offered to pay costs, and tendered a conveyance to plaintiffs. The bank moved for an order requiring. plaintiffs to pay into court the money tendered and subsequent taxes, and the abstract indicates the motion was sustained on May 16, although there is no journal entry to that effect. Plaintiffs moved for findings in their favor, the nature of which is indicated in the journal entry of the proceedings of May 16, which reads as follows:

"Plaintiffs presented their motion for findings, requesting the court to find that the deeds in question were given as security for indebtedness of plaintiffs to the bank, and that plaintiffs are mortgagors in possession of the land in controversy in this action, and after argument of counsel, and the court being fully advised in the premises, overruled said motion of plaintiffs, and gives plaintiffs forty days from this date to pay into court the amount tendered by the plaintiffs and accepted by the defendants, the First National Bank of Scott City, in its confession of judgment and acceptance of tender, and the case is passed until the expiration of forty days, to-wit, Monday, June 26, 1922."

Plaintiffs were obliged to borrow money on the land to make good their tender, and the loan could not be procured without title free from encumbrance in plaintiffs. To make such title it was necessary for the bank to procure release of a mortgage on the land for ·some $15,000. Therefore the parties arranged for concurrent performance. On June 26, plaintiffs paid into court the $36,000 tendered, and $613.45, the amount of taxes on the land paid by the bank subsequent to the original tender. The bank deposited in court a release of the mortgage and proper deeds to plaintiffs. Plaintiffs took the release and the deeds, recorded them, and went into possession. The court ordered the clerk to pay the money to the bank.

On paying the money into court, plaintiffs moved for an accounting, to determine the exact amount of their indebtedness, and for credit upon the indebtedness of the value of the use of the land while in the bank's possession. Plaintiffs had made no claim to rents and profits, except for three years preceding the tender of September 3, 1920, and the court held the subject of the amount of plaintiffs' indebtedness was settled and determined by the tender, its acceptance, and the subsequent action of the parties.

Tender is not an idle gesture, or a trap for an adversary. A tender is supposedly made in good faith, to be accepted and to end controversy, and if a tender be accepted, the controversy is ended. Because this is so, tender admits the amount tendered is necessary to accomplish the purpose of the tender. (*Shaw v. Sears,* 3 Kan. 242; *Latham v. Hartford,* 27 Kan. 249.) On the other hand, tender stops interest, discharges securities (*Mathews v. Insurance Co.,* 104 Kan. 540, 543, 179 Pac. 974), and determines liability for costs. To accomplish these results, however, the willingness and ability expressed by the tender must continue; that is, the tender must be "kept good."

In this instance, a valid tender was pleaded and confessed and, if the bank had accepted the money when tendered, plaintiffs could not have demanded an accounting. The portion of the petition relating to the tender was framed to preserve to plaintiffs all the benefits which accrued to them from the tender, by keeping it good. They offered to pay into court "said money," that is, $36,000 in legal tender of the United States, which had been tendered to the bank on September 3, 1920. They also offered to reimburse the bank for its subsequent advances to pay taxes. Disconnected portions of the petition, however, relating to rents and profits and the amount of plaintiffs' indebtedness, rendered their attitude ambiguous. Whatever their privately entertained notion may have been, the bank accepted the specific tender described in the petition, and held out to the bank for acceptance, by the petition. With affairs in this situation the cause came before the court for final disposition.

Plaintiffs were in a court of equity, where consistency is required and equivocal positions may not be maintained. The bank was confessing judgment and tendering title on the theory it was to receive $36,000 and taxes. Plaintiffs were either admitting it required payment of $36,000 and taxes to redeem, and were offering to pay the requisite amount of money into court, not to be litigated

over but for the bank, or they were not. They were obliged to choose one course or the other, and what did they do?

Plaintiffs requested the court to make certain findings in their favor; but they made no request that the court enter upon an accounting and find the amount necessary to redeem. They submitted to the order requiring them to pay the amount tendered into court, improved the forty days allowed them in which to obtain the necessary funds, obtained the funds on the basis of title to be vested in them by the bank's conveyance, paid $36,613.45 into court, and took down the deposited deeds.

It requires neither argument nor citation of authorities to show plaintiffs' motion was wholly without merit. It ran counter to two maxims of equity: They could not at the same time ride horses going in opposite directions; and they could not eat their cake and have it too, or, as the earlier expression was, "have the egg and the halfpenny too." (Michael de Meldoun's case, Hilary Term, 33 Edw. 1, Y. B. 2 Edw. 2, p. 27.)

The judgment of the district court is affirmed.